UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ZEJID SENDEROVIC<br>    Plaintiff<br><br>v.<br><br>LASERSHIP, INC.,<br>    Defendant | Case No.<br><br><br><br><br>FEBRUARY 9, 2018 |

## COMPLAINT

### I. INTRODUCTION

1. Employers in Connecticut must pay overtime to their employees at a rate of one and one half (1.5) times the employee's regular wage rate for every hour worked over forty hours in a week. Fair Labor Standards Act ("FLSA"), 29 U.S.C. Sec. 201 *et. seq.*, Connecticut Wage Act ("CWA"), C.G.S. Sec. 31-76c. Employers may not misclassify workers as independent contractors to avoid paying their employees overtime wages and other obligations. Instead, employers may only classify their workers as independent contractors if they pass all three parts of Connecticut's ABC test. *Tianti ex rel. Gluck v. William Raveis Real Estate, 231 Conn. 690 (1995).* Defendant, LaserShip, Inc., violated these laws when it classified Plaintiff, Senderovic, one of its delivery drivers, as an independent contractor rather than an employee, and failed to pay him overtime wages and made unauthorized deductions from his pay. As a result, LaserShip kept thousands of dollars of Senderovic's wages when those wages should have been paid to him.

## II. THE PARTIES

2. Plaintiff, Zejid Senderovic, is an adult resident of Wethersfield, Connecticut. Over the last four years, he has worked for Defendant in Connecticut as a delivery driver.

3. Defendant, LaserShip, Inc., is a foreign corporation incorporated under the laws of the State of Virginia, with its headquarters in Vienna, Virginia. Defendant does business in Connecticut and operates facilities in Connecticut.

## III. JURISDICTION AND VENUE

4. This court has jurisdiction over Senderovic's FLSA claims pursuant to 28 U.S.C. § 1331.

5. This court has jurisdiction over Plaintiffs' CWA claims pursuant to 28 U.S.C. § 1367 since they are so related to the FLSA claims that they form part of the same case or controversy.

6. Venue is proper in this district under 28 U.S.C. § 1391 because the acts or omissions giving rise to the claims in this Complaint took place in this district.

## IV. LEGAL CLAIMS / PRINCIPLES

7. The Fair Labor Standards Act and the Connecticut Wage Act require employers engaged in interstate commerce to pay overtime wages to employees at 1 ½ times their regular rate for hours over 40 in a week unless their duties match specific exemptions under those laws. 29 U.S.C. Sec. 201, C.G.S. Sec. 31-76c.

8. In Connecticut, employers can avoid paying overtime by using independent contractors, but they bear the burden of proving that their classification of workers as independent contractors was correct and not just a façade. Under the CWA, Connecticut

2

employs the ABC test for this purpose, *see Tianti ex rel. Gluck v. William Raveis Real Estate, 231 Conn. 690 (1995).*

9. The Connecticut Supreme Court has held that employers must prove all three components of the ABC test in order to claim independent contractor status for their workers. To be considered an independent contractor in Connecticut, it is the employer's burden to establish all three prongs of the ABC Test, and if it fails to establish any prong, its workers are not independent contractors but instead employees subject to wage protections:

- A. The worker must be free from direction and control in the performance of the service, both under the contract of hire and in fact. (Essentially, this is the common law definition.)

- B. The worker's services must be performed:

    (1) Outside the usual course of the employer's business,

    OR

    (2) Outside all of the employer's places of business.

    AND

- C. The worker must be "customarily engaged" in an "independently established" trade, occupation, profession or business of the same nature as the service being provided.

*Southwest Appraisal Grp., LLC v. Adm'r, Unemployment Compensation Act*, 324 Conn. 822, 838-840.  As set forth above, if any prong of the ABC Test is violated, the worker is not an independent contractor but an employee subject to wage protections.

## V.   STATEMENT OF FACTS

10. Defendant is in the business of providing the delivery of retail merchandise to its customers.  Defendant provides delivery services to entities such as Bodybuilding.com, Petco Animal Supplies, Inc., Urban Outfitters, Inc., Anthropologie, and Free People, and its "goal is to give you more time for what's important by delivering your favorite products to

3

you — fast." https://www.lasership.com/. In order to carry out this central function, Defendant purports to contract with individuals such as Senderovic, to drive a delivery truck and to deliver retail merchandise to customers' homes.

11. Senderovic performed delivery services for Defendant. In order to receive such work, Defendant required Senderovic to sign an agreement which stated that he was an independent contractor.

12. Although Defendant has classified Senderovic as an independent contractor, the behavioral and financial control manifested over Senderovic by Defendant demonstrates that Senderovic is the Defendant's employee in violation of prong A of Connecticut's ABC Test. Such control includes, but is not limited, to the following matters:

    a. Defendant controlled Senderovic's work location by requiring Senderovic to report to work at specified locations maintained and/or controlled by Defendant at specified times;

    b. Defendant controlled where Senderovic would park by requiring him to park in a specified parking spot upon his arrival to work;

    c. Defendant controlled what Senderovic wore to work by requiring Senderovic to be in Defendant's uniform;

    d. Defendant controlled Senderovic's vehicle by requiring Senderovic to use a white colored vehicle within Defendant's specifications and with Defendant's company logo affixed to it in a specific location on the vehicle, and by inspecting the vehicle (for things such as snow tires) prior to Senderovic's departure;

e.  Defendant controlled Senderovic's use of his vehicle at work by requiring Senderovic to refrain from allowing any passengers to ride in his own vehicles at work without written authorization from Defendant;

f.  Defendant controlled Senderovic's use of his vehicle and equipment at work by prohibiting Senderovic from using the vehicle and equipment for any other purpose than making deliveries for Defendant, and by requiring that the equipment be for Defendant's exclusive possession, control, and use throughout the duration of the term (typically one year);

g.  Defendant controlled Senderovic's work by requiring that he load deliveries onto his trucks in a specific order (last delivery loaded first, first delivery loaded last);

h.  Defendant controlled Senderovic's work by requiring that Senderovic use manifests and route sheets which instructed him as to the order of deliveries, to whom deliveries must be made, and locations where deliveries must be made;

i.  Defendant further controlled Senderovic's work by requiring that Senderovic use an application, "ELI", which used GPS to ensure Senderovic was using the exact route which Defendant had imposed;

j.  Defendant further controlled Senderovic's work by instructing Senderovic to make all deliveries within two hours of pick up;

k.  For instance, on May 26, 2016, Defendant's managers forwarded Senderovic email complaints because his routes were running three to four (3-4) hours late;

l.  Defendant controlled Senderovic's work by contacting Senderovic during the day with instructions related to cancellations and rescheduling of deliveries, and follow up on the status of specific deliveries;

m. For instance, on November 10, 2017, Defendant's Hartford General Manager, Binh Son, sent an email complaint to Senderovic for not responding quickly enough concerning two (out of over a hundred) deliveries which had not yet been completed;

n. Defendant controlled Senderovic's work by requiring Senderovic to check in with the Defendant's dispatch before departing for the day to ensure that all packages were loaded;

o. Defendant controlled Senderovic's work by adding deliveries not originally scheduled for the day to Senderovic's routes, and Defendant did not permit Senderovic to postpone those deliveries for another day or to turn them down;

p. Defendant controlled Senderovic's work by punishing or disciplining Senderovic, or denying him assignments and / or routes, if he ever attempted to reject any specific delivery which Defendant had assigned him;

q. Defendant controlled Senderovic's work by requiring Senderovic to enter into the "ELI" application bar codes or identifying numbers of deliveries made so Defendant and its customers could track delivery status;

r. Defendant controlled Senderovic's work by requiring Senderovic to contact Defendant dispatchers regarding the status of deliveries whenever the application was not synchronizing with the internet and Defendant's tracking system;

s. Defendant controlled Senderovic's work by refusing to pay Senderovic, and sometimes by deducting a monetary charge from Senderovic's pay, whenever the Defendant's ELI application failed to download delivery status to Defendant's

server, even when it was due to lack of internet service, and even when Senderovic called in the failure to download;

t. For instance, from November 11, 2017 to November 13, 2017, Senderovic and Defendant corresponded by email over invoices for supposed shortages on deliveries which Senderovic had in fact made;

u. Defendant controlled Senderovic's work by monitoring customer complaints as to whether the delivery was made to the correct door and close enough to said door;

v. For instance, on October 16, 2017, Defendant's Fleet Manager Joseph Marcuccio emailed Senderovic about why his helper "Rodney" was not going to front door;

w. Defendant controlled Senderovic's work by requiring Senderovic to rent or purchase communication devices provided by and/or approved by Defendant so that he may receive directives from Defendant;

x. Defendant controlled Senderovic's work by requiring Senderovic to get signatures from customers when deliveries were made and to sign a customer's name on documents when the customer was not available;

y. Defendant controlled Senderovic's work by requiring him to show insurance for any helpers who worked with him;

z. For instance, on December 6, 7, and 8 of 2017, Defendant's Fleet Manager Joseph Marcuccio corresponded with Senderovic on a series of emails on the subject of insurance compliance with the heading "INSURANCE COMPLIANCE REQUESTED";

      aa. Defendant controlled Senderovic's work by requiring him to purchase their worker's compensation insurance and other insurance, and deducting the costs directly from Senderovic's pay; and

      bb. Defendant controlled Senderovic's work by requiring him to call in at the end of each day to confirm deliveries, and often to pick up additional deliveries before he was dismissed for the day.

13.    Defendant violated the first part of prong B of the ABC test because, contrary to the language of Defendant's "Independent Contractor Agreement" that it is "in the business of *soliciting* messenger, courier, and other delivery services needs of the public," Defendant and Senderovic were in fact engaged in the usual course of business of "delivering products to [Defendant's customers]." www.lasership.com.

14.    Defendant also violated the second part of Prong B since Defendant required Senderovic to perform services within some of Defendant's places of business (i.e. picking up deliveries and/or presenting equipment for inspection, etc.).

15.    Defendant also violated prong C of the ABC test because Senderovic did not have an independently established trade or business in that he was entirely dependent upon Defendant for his work, did not negotiate with Defendant's customers regarding the rates charged for his services, and did not contract with Defendant's customers independent of Defendant.  Defendant not only made independence for Senderovic impractical due to time constraints, but his equipment was subject to the exclusive possession, control and use of Defendant pursuant to the purported contractor agreement.

16.    Defendant treated Senderovic as an employee rather than an independent contractor by identifying Senderovic and other "independent contractors" not by the names of

8

their respective businesses or even their own names, but by their individual social security numbers.

17.     Senderovic routinely worked six days per week, routinely worked in excess of forty (40) hours per week and averaged approximately sixty (60) hours per week.

18.     For example, in the work week of November 12, 2017, Senderovic worked seventy-two (72) hours and fifty-one (51) minutes and was not paid any overtime wages.

19.     Defendant paid Senderovic a flat rate, usually three dollars and fifty cents ($3.50) per delivery but did not pay Senderovic his overtime rate when Senderovic worked in excess of forty hours in a week.

20.     Defendant deducted certain expenses directly from the compensation it paid Senderovic, including deductions for insurances (including auto liability, cargo, general liability, umbrella and workers' compensation insurance), administrative costs such processing fees, fees for use of its mobile applications, and fees due to failure of equipment which Defendant had mandated be used.

21.     For example, on November 9, 2017, among other deductions, Defendant deducted from Senderovic's compensation Cargo Insurance, Occupational Accident Insurance, and a mobile application fee.

22.     Defendant also compelled Senderovic to incur certain expenses which would normally be borne by an employer, such as employer payroll taxes, administrative fees, fuel costs, vehicle maintenance costs, and payments to helpers.

23.     For example, in the first work week of November 2017, Senderovic had to pay fuel costs, maintenance costs, and all costs related to paying his helper.

24.     When Defendant determined, in its sole discretion, that a delivery had been made in a manner it deemed to be unsatisfactory (e.g., damaged goods, damage to customer property), Defendant would deduct the costs of such damage from Senderovic's pay checks.  Senderovic could not appeal such deductions.

## COUNT I

## ILLEGAL WITHHOLDING OF WAGES

25.     Although Senderovic was designated as an independent contractor by Defendant, in fact he was an employee for the reasons stated above and was protected by Connecticut's wage payment laws, C.G.S. Section 31-58 et seq.

26.     Defendant's practice of making deductions from Senderovic's pay without written authorization violates Conn. Gen. Stat. Sec. 31-71(e) which provides that "[n]o employer may withhold or divert any portion of an employee's wages" except in circumstances inapplicable here, such as healthcare or retirement deductions.

27.     As a result of Defendants illegal deductions from Plaintiff's, Defendant is liable to Plaintiff for damages in the amount of all deductions unlawfully withheld, an equal amount as penalty damages, as well as costs and reasonable attorney's fees all pursuant to Conn. Gen. Stat. 31-72.

## COUNT II

### UNPAID OVERTIME IN VIOLATION OF THE
### FAIR LABOR STANDARDS ACT

28. Defendant's conduct in failing to pay Plaintiff overtime wages was a violation of the Fair Labor Standards Act, 29 U.S.C. Sections 201 *et seq.*

29. Accordingly, Senderovic is entitled to compensation for all overtime hours worked, liquidated damages, attorneys' fees and court costs.

## COUNT III

### UNPAID OVERTIME IN VIOLATION OF THE
### CONNECTICUT WAGE ACT

30. Defendant's conduct in failing to pay Plaintiff overtime wages was a violation of the Connecticut Wage Act, 31-58, *et seq.*

31. Accordingly, Senderovic is entitled to compensation for all overtime hours worked, an equal amount as penalty damages, liquidated damages, attorneys' fees and court costs all pursuant to Conn. Gen. Stat. Section 31-68.

## COUNT IV

### UNJUST ENRICHMENT

32. As set forth above, by misclassifying Senderovic as an independent contractor when he was an employee under Connecticut law, Defendant was unjustly enriched or was conferred a benefit because it unlawfully shifted its business costs and expenses to Senderovic, including but not limited to employer payroll taxes, administrative fees, fuel and vehicle maintenance costs, to the detriment of Senderovic.

33. Defendant was aware that it received a benefit as a result of the misclassification, and it would be unjust to let Defendant keep the benefit of its savings in business costs and expenses.

34. The Defendant appropriated this benefit to the detriment of Senderovic, who unjustly incurred costs which should have been born by the employer.

35. Unjust enrichment may occur where a contract exists if the terms of a contract violate express statutory restrictions, those terms may be void as being against public policy. See, e.g., Rupert's Oil Service v. Leslie, 40 Conn. Supp. 295, 297-98 (Conn. Super. Ct. 1985); *Bokanoski v. Lepage Bakery*, 3:15-cv-00021(D. Conn, 6/29/16, J. Hall).

36. Defendant's "Independent Contractor Agreement" violates Connecticut pubic policy against unlawful deductions in employment. Connecticut law prohibits employers from "withhold[ing] or divert[ing] any portion of an employee's wages" (1) without state or federal authorization, (2) without specific written authorization by the employee on an approved form, (3) without authorization by the employee for certain medical expenses, (4) unless the amount is withheld automatically for certain retirement funds, or (5) the amount is withheld for certain taxes. Conn. Gen. Stat. § 31-71e. Further, Connecticut law prohibits employers from "demand[ing], requesting[ing], receiv[ing] or exact[ing] any refund of wages, fee, sum of money or contribution from any person . . . upon the representation or the understanding that such refund of wages, fee, sum of money, contribution or deduction is necessary to secure employment or continue in employment." Conn. Gen. Stat. § 31-73(b).

37. Defendant's conduct in this regard was malicious in that it was done in conscious disregard of Plaintiff's rights.

38. As a result of Defendant's misclassification of Senderovic, it was unjustly enriched in the amount of out of pocket expenses incurred by Senderovic during his employment. Accordingly, Defendant is liable to Plaintiff in the amount of those out of pocket expenses incurred as a result of the misclassification.

WHEREFORE, the Plaintiff prays that this Court grant him appropriate compensatory relief, including:

a. Unpaid overtime wages under the FLSA;

b. Unpaid overtime wages under the CWA;

c. Withheld wages under the CWA;

d. Liquidated damages under the FLSA;

e. Penalty damages under CWA;

f. Compensatory damages under the law of unjust enrichment;

g. Punitive damages under the common law:

h. Pre-Judgment and Post-Judgment interest, as provided by law;

i. Attorneys' fees and costs of suit under the FLSA and CWA, including expert fees; and

j. Such other and further relief as the Court deems just and equitable.

Respectfully Submitted,

ZEJID SENDEROVIC,
By his attorneys:

/s/ Richard Hayber
Richard E. Hayber
Juris No: ct11629
The Hayber Law Firm, LLC
221 Main Street, Suite 502
Hartford, CT  06106
(860) 522-8888 telephone
(860) 218-9555 facsimile
rhayber@hayberlawfirm.com